## A98A1331. EVANS v. THE STATE.
### (510 SE2d 313)

BEASLEY, Judge.

In 1992, Robert Lee Evans and Emma Evans Walker were jointly indicted and tried for sale of cocaine. OCGA § 16-13-30 (b). Under the version of OCGA § 16-13-30 (d) in effect at the time in question,[1] Evans was given a mandatory sentence of life imprisonment because of prior convictions of sale of cocaine and possession of cocaine with intent to distribute.

This is Evans' appeal of his conviction.[2] He claims his due pro-

---

[6] See *McGugan v. State*, 215 Ga. App. 535, 536 (451 SE2d 460) (1994), and cases cited therein.

[1] Ga. L. 1990, p. 992, § 1.

[2] The record shows the following sequence of events: The jury returned its guilty verdicts against both Evans and Walker on December 9, 1992. On January 13, 1993, the court imposed sentence, and Evans filed a motion for new trial. A motion by appointed counsel to

cess rights were violated by the admission of testimony concerning an undercover narcotics agent's pretrial identification of him through a single photographic display. He also contends the court erred in denying his motion for directed verdict of acquittal, in refusing to order disclosure of the identity of a confidential informant, and in admitting evidence of an independent crime. His final complaint is that imposition of a mandatory life sentence constituted cruel and unusual punishment under the state and federal constitutions.

Prior to trial, Evans filed motions for an in camera examination of the testimony of the confidential informant, for disclosure of the informant's identity, and to suppress any identification testimony by the narcotics agent. At a pretrial hearing, the court reserved ruling on the motions, but no rulings appear in the record. At the beginning of trial, the court did rule that the State's similar transaction evidence could be admitted.

Evidence presented at trial showed that at approximately 7:25 p.m. on March 10, 1992, Georgia Bureau of Investigation (GBI) agent Ford and a confidential informant went to a residential address in Perry to buy crack cocaine. At the time, Ford had been doing undercover narcotics work for the GBI for approximately ten months and had been given special training designed to enhance his ability to observe, document and identify suspected drug dealers.

When he and the informant appeared at the residence, Evans was standing on the front steps. After the informant introduced the agent to Evans, the agent said he wanted to purchase about $300 or $400 worth of crack cocaine. Evans said he could probably go next door and get something. He went to a side door of the residence and called a woman named Emma, who came outside. After Evans told her what the agent wanted, she went back inside, retrieved a flashlight, and walked around the residence. Upon her return, Agent Ford followed her into the residence and gave her $300 in exchange for six pieces of crack cocaine. The agent rejoined Evans outside and, when asked by Evans if he had gotten what he needed, replied "yes." The agent testified that he was present at the residence for approximately ten minutes. His initial conversation with Evans lasted for a minute or two and occurred at night.

After leaving, the agent made detailed notes of Evans' and Walker's physical appearance. The following afternoon, he met with another GBI agent who showed him four photographs of four different individuals from whom he had purchased cocaine. One photo-

withdraw as attorney of record was filed and granted on November 23. Between January and August 1994, Evans filed several pro se motions to obtain a copy of the trial transcript. Orders denying Evans' motion for new trial were filed on November 22, 1996, and January 23, 1997. On February 23, 1997, the court entered an order allowing an out-of-time appeal.

graph was of Evans and another was of Walker. When shown the photographs, Agent Ford positively identified both of them. He also made positive identifications at trial.

Officer Canady testified that while working as an undercover agent for the City of Perry Police Department he made a street purchase of crack cocaine from Evans at approximately 8:35 p.m. in August 1988 while another male and female were present. The court admitted this evidence for the purpose of showing Evans' identity, bent of mind, and course of conduct.

Evans testified that he did not aid in the sale of cocaine to Agent Ford on the day in question and denied ever having met him.

1. Since the trial court did not rule on Evans' pretrial motion to suppress the identification testimony of Agent Ford, and since Evans did not object to either the pretrial or in court identification testimony when offered at trial, he waived his right to contest the admissibility of the identification evidence on appeal.[3]

2. "The denial of a motion for directed verdict of acquittal where, as here, the motion is grounded on insufficiency of the evidence should be affirmed if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[4]

The evidence that Evans was a party to the sale of cocaine and to his accomplice's possession of it meets this test. There is no merit in his argument that the evidence was insufficient to show that he had either actual or constructive possession of the cocaine. Moreover, neither actual nor constructive possession of cocaine is an element of the offense of sale of cocaine under OCGA § 16-13-30 (b).[5]

3. The trial court did not err in admitting the similar transaction evidence.

" 'It is universally recognized . . . on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent from

---

[3] *Robinson v. State,* 208 Ga. App. 528, 529 (2) (430 SE2d 830) (1993); see *Moore v. State,* 215 Ga. App. 626 (1) (451 SE2d 534) (1994).

[4] (Citations and punctuation omitted.) *Collins v. State,* 205 Ga. App. 341, 342 (1) (422 SE2d 56) (1992).

[5] "As stated by the United States Supreme Court in *Albrecht v. United States,* 273 U. S. 1, 11 (47 SC 250, 71 LE 505) (1927), ' . . . possessing and selling are distinct offenses. One may obviously possess without selling, and one may sell and cause to be delivered a thing of which he has never had possession.' (Brandeis, J.)" *Haynes v. State,* 249 Ga. 119, 122, n. 1 (288 SE2d 185) (1982) (Marshall, J., dissenting).

that for which he is on trial, *even though it be a crime of the same sort,* is irrelevant and inadmissible.' "[6] " 'However, if the evidence is substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is a man of criminal character, it is admissible even if it incidentally puts the defendant's character in issue.' "[7]

To render evidence of another crime admissible, " '[t]wo conditions must be satisfied. First, there must be evidence that the defendant was in fact the perpetrator of the independent crime. Second, there must be *sufficient similarity or connection* between the independent crime and the offense charged, that proof of the former tends to prove the latter.' "[8] *Williams v. State*[9] and Uniform Superior Court Rule 31.3 additionally require the court to find that the evidence will be introduced for an appropriate purpose and not to raise an improper inference as to the accused's character.[10]

"Even if all of these criteria are met, 'the trial court retains the sound legal discretion to exclude relevant similar crimes evidence on the ground that its probative value is substantially outweighed by the danger of unfair prejudice.' "[11] "In exercising this discretion, the court should consider whether 'the State's *need* for the similar transaction evidence outweigh(s) the prejudice inherent to the defendant.' This consideration consists of at least two questions. First, is the issue for which the State is introducing the evidence a genuinely disputed issue? . . . Second, does the State need this evidence to prove the issue, or can the fact be proved otherwise?"[12]

Here, the State's need for extrinsic evidence relevant to the disputed issue of identity is undisputed. The question is whether the extrinsic crime was sufficiently similar to the crime charged so as to have authorized the trial court to admit it in evidence. In resolving the question, we respect the principle that the appellate court should not disturb the findings of the trial court on the issue of similarity or connection of similar transaction evidence unless they are clearly erroneous.[13]

"The test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two inci-

---

[6] (Emphasis in original.) *Smith v. State*, 232 Ga. App. 290, 291 (1) (501 SE2d 523) (1998), citing *Bacon v. State*, 209 Ga. 261, 262 (71 SE2d 615) (1952), and *Stephens v. State*, 261 Ga. 467, 469 (6) (405 SE2d 483) (1991).

[7] *Smith*, supra, 232 Ga. App. at 291.

[8] (Emphasis in original.) Id. at 291-292.

[9] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[10] *Smith*, supra, 232 Ga. App. at 292.

[11] Id.

[12] (Emphasis in original.) Id. at 292-293.

[13] *Mitchell v. State*, 206 Ga. App. 672, 673 (2) (426 SE2d 171) (1992).

dents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character. Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct."[14]

Evans is on trial for facilitating the sale of crack cocaine from a residence in Perry, Georgia, and the State was allowed to introduce similar transaction evidence of a prior direct hand-to-hand sale of crack cocaine made on a street corner. Although there are differences between these two modes, it is the similarities and relevance we must focus on. Small amounts of cocaine were sold in retail fashion in the same city on a one-time basis after gaining trust, once through an informant and once directly, and such sales were accomplished by or through the defendant in the presence of compatriots. While the sales did not occur in exactly the same geographical place, such a factor is not decisive. Moreover, the city in which the sales took place is not a sprawling metropolis, but a relatively small city, discounting the importance of any distance between the sales.

"[I]t is clear in this case that based upon defendant's denial of the commission of the subject crime ([sale of crack cocaine]), a past conviction involving the [sale of crack cocaine] would be most helpful to the jury, and therefore the State's need would have outweighed the prejudice to the defendant."[15] As a result, the trial court's finding that the earlier transaction was sufficiently similar cannot be said to be clearly erroneous. The consequent admission of the evidence is not reversible error.

4. But the court erred in refusing to conduct an in camera examination of the testimony of the confidential informant.

In arguing that such an examination was required, Evans relies on *Moore v. State*.[16] The State counters with *Chester v. State*.[17] This case approximates *Moore* more than *Chester*.

In *Moore*, the informant introduced the undercover agent to the defendant at a bar. According to the agent, the defendant sold him cocaine in the bathroom, and the informant witnessed the sale but

---

[14] (Citations and punctuation omitted.) *Hatcher v. State*, 224 Ga. App. 747, 752 (3) (482 SE2d 443) (1997); see *Collins v. State*, supra at 342 (1); *Cantrell v. State*, 210 Ga. App. 218, 220 (2) (435 SE2d 737) (1993).
[15] (Punctuation omitted.) *Hatcher*, supra, 232 Ga. App. at 751-752 (3).
[16] 187 Ga. App. 387, 389 (2) (370 SE2d 511) (1988).
[17] 195 Ga. App. 770, 771 (2) (395 SE2d 4) (1990).

did not otherwise participate in it. The defendant claimed that a fourth individual present in the bathroom was the seller. This other individual could not be located, nor could he be expected to appear in court and incriminate himself. Thus, the informant was the only witness in a position to amplify or contradict the testimony of the defendant and the government witness.[18] Under these circumstances, *Moore* held that the controlling case law[19] requires the identity of the confidential informant to be disclosed if, after conducting an in camera proceeding, the trial court determines that the informant is a material witness for the defense.

In this case, as in *Moore*, the informant introduced the agent to defendant and witnessed his participation in the transaction. He is the only one who can amplify or contradict the testimony of Evans and Agent Ford on the pivotal issue of identity.

*Chester* is distinguishable. Chester sought disclosure of a confidential informant's identity solely to impeach his credibility based on prior criminal convictions. He was not seeking to elicit any favorable testimony from him.

In *Moore*, we further held that if the State could not produce the confidential informant for in camera proceedings, the trial court would be required to conduct a post-trial hearing to resolve the issue of whether the error in failing to reveal the informant's identity was prejudicial or harmless. Here, a new trial is required under the ruling in Division 3. If the State cannot produce the informant for a new trial, the court must determine whether the prosecution should proceed in his absence. This complex issue has not been briefed or argued, and we do not address it.

5. Finally, the challenge to the constitutionality of Evans' sentence has already been rejected by the Supreme Court of Georgia in *Stephens v. State*,[20] and the cases cited therein, with respect to both constitutions.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 3, 1998.

*Randolph E. Wynn*, for appellant.

---

[18] Compare *Walton v. State*, 194 Ga. App. 490, 491 (1) (390 SE2d 896) (1990).

[19] *Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639) (1957); *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963); *Thornton v. State*, 238 Ga. 160 (231 SE2d 729) (1977).

[20] 261 Ga. at 468 (5) (not cruel and unusual punishment). See also *Isom v. State*, 261 Ga. 596, 597 (1) (408 SE2d 701) (1991) (not deprivation of equal protection or due process).

*Kelly R. Burke, District Attorney, Jeffrey L. Wolff, Assistant District Attorney*, for appellee.