A02A0283. GARDNER v. THE STATE.
(566 SE2d 329)

ELDRIDGE, Judge.

Following a bench trial in the Superior Court of Decatur County, Christopher D. Gardner was found guilty of manufacturing marijuana and sentenced to ten years probation.[1] He appeals his conviction and claims that (1) the trial court erred in denying his motion to suppress because investigating officers improperly intruded on his property without a warrant; and (2) the trial court improperly found that refusing to consent to a search of one's property may be used as a factor in establishing probable cause for a search warrant to issue. Upon review, we affirm.

In reviewing a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment of the trial court,

---

[1] Gardner's co-defendant wife, Karen Gardner, was also found guilty, but an appeal on her behalf is not before us.

and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous.[2] "Furthermore, in considering the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial."[3]

Here, the record shows that a task force engaged in marijuana identification and eradication was deployed in Decatur County. Both a "ground team" and a helicopter "air team" were involved. On the date in question, the two teams met at an airport in Thomasville. The air team was deployed first, while the ground team waited for instruction. At approximately 10:50 a.m., the helicopter team radioed to the ground team that marijuana plants had been found. As Decatur County Deputy Sheriff T. Willis of the ground team testified, the air team

> gave us directions how to get there, told us that it was off of Bethel Road and onto, not too far off of Bethel Road onto a dirt road. They gave us the general location, description of the area and we found them to be hovering over 929 Hatcher Road which is the residence of the Defendants. The information that the air team relayed back to the ground team was that they had found approximately 15 plants growing in close proximity behind the residence and it was a double wide trailer.

The ground team drove up the Gardners' driveway in order to access the marijuana located in an open field approximately 200 feet immediately behind the residence and outside their property; the Gardners' residence was the only one close to the marijuana plants. Karen Gardner was standing in the driveway. Three members of the team exited their vehicle and walked the 200 feet through the back of the Gardners' property in order to reach the marijuana plants, which plants were specifically located via the air team's radioed directions. Ultimately, fourteen marijuana plants were found; several of the plants were still in five-gallon black plastic pots awaiting planting.

While other members of the ground team located the marijuana, Deputy Willis stayed behind and approached Mrs. Gardner, who was visibly upset.

> I wanted to explain to her what was going on, what the situation was, and I explained to her she was not under arrest although I did want her to stay there at the residence until we found out what was going on. I advised Mrs. Gardner

---

[2] *Rider v. State*, 222 Ga. App. 602 (475 SE2d 655) (1996).
[3] *Watts v. State*, 246 Ga. App. 367, 371 (4) (541 SE2d 41) (2000).

that the helicopter flying overhead had found some marijuana plants, what we believed from the air to be marijuana plants, growing behind her residence and that was our whole reason for being there and that was what we were investigating.

After talking with Karen Gardner, Deputy Willis attempted to join the rest of the team in the open field behind the Gardners' residence:

I began walking towards where the other ground crew members had gone to where the plants were located. And as I started walking down, they were already heading back, this being Jennings White, Mike Murphy, and one or two other gentlemen that I don't remember their names, but they were coming back. I specifically remember Mike walking back up towards the residence and instructing me that he had already photographed the plants and they had them in a paper sack and they had already bagged them up.

While walking back from the field behind the Gardners' residence, Deputy Willis saw in plain view a black plastic pot with a marijuana plant growing in it. The pot was in a shed, completely open on two sides, which was attached to a wooden deck connected to the back of the Gardners' mobile home. Deputy Willis testified at the motion hearing that "The plant that I found was in plain view there at the edge of the floor of the shed. . . . [Y]ou could see it just from standing in the back yard." A photograph of the open shed was introduced at trial, and the deputy testified that "it was sitting right there (indicating [picture of open shed taken from backyard]) on the beams that extend from the shed." The deputy also observed in the open shed numerous gardening tools, five-gallon black plastic pots, and a fifty-pound bag of fertilizer.

Shortly thereafter, Christopher Gardner drove up to the residence. Both Gardners refused consent to search their residence. Christopher Gardner was subsequently arrested for possession of marijuana.[4] Deputy Willis then sought and obtained a search warrant for the Gardners' mobile home based on: the marijuana plant observed in plain view in the open shed; the nexus between the black plastic pots in the field and the black plastic pots in the shed; the proximity between the residence and the marijuana plants found in the open field 200 feet immediately behind the house and contiguous thereto; and the Gardners' refusal to permit a consent search of their

---

[4] Karen Gardner was permitted to remain with her two children.

residence. Recovered during the search were marijuana, marijuana seeds, and books on growing marijuana.[5]

Christopher Gardner filed a motion to suppress. With regard thereto, the trial court found that

> The officers had a right to be in the place that they were in the investigation of that crime being committed in their presence. And the Court further finds that the lack of cooperation or refusal to consent to a search is a legitimate fact which can be communicated to a Magistrate in the securing of a search warrant and which can be taken into account with other factors when determining probable cause. The Court finds that there was sufficient probable cause and the motion to suppress is DENIED.

*Held*:

1. Gardner contends that the ground team's entry onto his property was a warrantless intrusion unsupported by probable cause and in violation of his Fourth Amendment rights; thus, Deputy Willis was not legally on the property in order to observe the marijuana plant in plain view in the shed. We disagree.

No Fourth Amendment interests were triggered simply because the ground team entered onto Gardner's property.[6] "The officers needed no warrant to approach the appellants' house to make investigative inquires."[7] In this case, the ground team had reasonable suspicion — if not probable cause, itself — to perform an investigation of the suspected marijuana plants discovered in an open field immediately behind and contiguous to Gardner's property. Gardner does *not* claim that the open field was part of his curtilage, and, thus, no search warrant was necessary therefor. Gardner's property simply provided ground access to the open field in furtherance of a legitimate investigation based on reasonable articulable suspicion of a crime being committed in the officers' presence, i.e., manufacturing marijuana.[8]

> Accordingly, whether the area entered in fact was constitutionally protected under the Fourth Amendment, the con-

---

[5] See, e.g., *Hydroponics for Dummies* and *How to Grow Marijuana*.

[6] *Stewart v. State*, 236 Ga. App. 888 (513 SE2d 778) (1999); *Pickens v. State*, 225 Ga. App. 792, 793 (484 SE2d 731) (1997); *Jenkins v. State*, 223 Ga. App. 486, 487-488 (1) (477 SE2d 910) (1996); *State v. Zackery*, 193 Ga. App. 319 (387 SE2d 606) (1989).

[7] *Evans v. State of Ga.*, 214 Ga. App. 844, 845 (1) (449 SE2d 302) (1994), vacated and remanded on other grounds, 217 Ga. App. 646 (458 SE2d 859) (1995). See also *Gilreath v. State*, 247 Ga. 814, 819 (279 SE2d 650) (1981); *Strozier v. State*, 244 Ga. App. 514, 515 (535 SE2d 847) (2000).

[8] OCGA §§ 16-13-30 (j) (1); 16-13-21 (24).

duct of the [officers] in entering onto private land through a [driveway] and [walking 200 feet to an open field] to investigate [suspected marijuana plants] was a legitimate intrusion and not unreasonable conduct within the meaning of the Fourth Amendment.[9]

Further, there is no evidence that a search was made of the curtilage surrounding Gardner's trailer, as Gardner asserts by brief. Neither Gardner nor his wife testified, and no factual basis was offered in support of this assertion. The trial court determined to the contrary, and since such determination was based on testimony from several of the officers involved, it was not clearly erroneous.[10] Absent any such search, the Fourth Amendment is not implicated, because

[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. Consequently, a police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point.[11]

Here, the evidence shows that, after the plants in the open field were legitimately seized and while walking back from the field where the officers had a right to be, the marijuana plant in the Gardners' open shed was seen in plain view, as were gardening tools, five-gallon black plastic pots similar to the ones in the open field, and a fifty-pound fertilizer bag. According, denial of the motion to suppress on the ground enumerated above was not error.[12]

2. It was error for the magistrate to consider the Gardners' refusal to consent to a search of their residence as part of the basis for the issuance of the search warrant in this case. Refusing consent to search was the Gardners' right, and "[w]e decline to view the exercise of a constitutional right as a factor in determining probable cause."[13] Thus, the trial court's determination that refusal to consent

---

[9] *Perry v. State*, 204 Ga. App. 643, 644 (2) (419 SE2d 922) (1992).

[10] *Thomas v. State*, 203 Ga. App. 529, 534 (3) (417 SE2d 353) (1992).

[11] *Strozier v. State*, supra at 515.

[12] In an unrelated claim asserted under this same enumeration of error, Gardner apparently contends that he could not be arrested in his yard without a warrant based on the Supreme Court's holding in *Carranza v. State*, 266 Ga. 263 (467 SE2d 315) (1996). However, "[s]ince [the deputy] did not enter his home and [Gardner] had [not entered] it before he was placed under arrest, *Carranza*, supra, is not implicated." *Goddard v. State*, 244 Ga. App. 730, 733 (1) (536 SE2d 160) (2000).

[13] *Schmidt v. State*, 188 Ga. App. 85, 88 (372 SE2d 440) (1988).

to a search may be taken into account when determining probable cause is error as a matter of law.

That said, however, a review of the affidavit in support of the warrant request demonstrates an ample factual basis for the warrant to issue absent the Gardners' refusal to consent, which factual basis consisted of the majority of the facts outlined above. Under the "totality of circumstances" review utilized on appellate review, we find that "the magistrate had a substantial basis for concluding that probable cause existed."[14]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED MAY 22, 2002.

*Gilbert J. Murrah*, for appellant.

*J. Brown Moseley, District Attorney, Ronald R. Parker, Assistant District Attorney*, for appellee.

---

[14] (Citations and punctuation omitted.) *McAlister v. State*, 236 Ga. App. 609, 610 (3) (512 SE2d 53) (1999).