A02A1238. GASTON v. THE STATE.
(571 SE2d 477)

SMITH, Presiding Judge.

Timothy Lee Gaston was indicted by a Chatham County grand jury for trafficking in cocaine and several traffic offenses, including no driver's license and no tag light. He was tried before a jury, which found him guilty of all charges, and his motion for new trial, as amended, was denied. Gaston appeals, raising 17 enumerations of error, including challenges to the denial of his motion to suppress, the trial court's jury charge, the introduction of similar transaction evidence, the improper admission of evidence, ineffective assistance of counsel, and the general grounds. We find no merit in any of Gaston's contentions, and we affirm the judgment.

Construed to support the jury's verdict, the evidence presented at trial showed that in the early morning hours of May 12, 1999, Corporal Sean Wilson of the Savannah Police Department was training

Officer Daniel Rhimes, a new police officer, to observe infractions and stop suspicious persons. The two officers were in their police car in an office parking lot in Savannah. As they left the parking lot and entered a main street, Rhimes noticed a car with a missing tag light. The officer turned on his emergency lights, and the car pulled over. The driver, later identified as Gaston and who was alone in the car, emerged and came toward the police car "at a pretty high pace." This concerned the officers for safety reasons, and Gaston was instructed three times to return to his vehicle before he complied.

The officers then approached the car, and Gaston produced a state identification card and an insurance card, but not a driver's license. Gaston told the officers he believed his license might be in the car's trunk, and the officers permitted him to open the trunk and look, unsuccessfully, for the license. Because the name on the insurance card was not Gaston's, the officers asked for the registration.

While Gaston was looking in the glove box for the registration and his license, Wilson shone his flashlight on Gaston and observed that Gaston was "trembling tremendously," which made Wilson suspicious. Gaston was placed in the back of the patrol car while the officers checked his driver's license status. While Rhimes was checking on Gaston's driver's license, Wilson returned to Gaston's car, shone his light inside, and saw a paper bag on the floorboard under the driver's seat. Wilson returned to the patrol car and asked Gaston whether he had any drugs, alcohol, or weapons in the car. Although Gaston denied having any, he refused to allow the officers to search the car, saying "I can't let you do that." He stated that he could not let them search because it was his aunt's car. He also informed the officers that he usually drove the car and he did not want the car searched.

By this time, Rhimes had learned that Gaston's driver's license had been expired since October 1995. Wilson returned to the car on the passenger side, shone his light inside, and observed a Nike shoe box on the floorboard in front of the passenger seat. Holes were cut into the sides of the box, and because of the flashlight Wilson could see inside the box. He crossed to the driver's side, where the window was open, and shone the light into the box's holes. Wilson then could see clear cellophane bags which, because of his past experience, he believed contained crack cocaine. Wilson opened the Nike box and found a smaller, blue box containing a substance later identified as 249.3 grams of powder cocaine with a purity of 60 percent. The larger box also contained a substance later identified as 494.8 grams of crack cocaine with a purity of 62 percent. Gaston was arrested, and a wrecker was called to tow the car, which was impounded.

Agent Harry Glenn, an officer with the Chatham Narcotics Team (CNT), testified that he was called to the scene and shown the Nike

box, with the bags of cocaine "readily visible." After identifying the cocaine, this officer opened the box and saw the blue box containing powder cocaine, and the crack cocaine in cellophane bags. At trial, he identified the crack cocaine as being in the form of "cookies" that are delivered by mid-level dealers to street dealers, who then break the "cookies" down further and repackage the fragments in small baggies for sale. In his opinion, derived from experience, the cocaine found was not packaged for street sale but for distribution to street dealers. The street price of cocaine as estimated by CNT is $100 per gram. The street value of the drugs found in the car Gaston was driving was therefore approximately $77,500. The State also presented evidence of a similar transaction in which Gaston was arrested in 1994 for selling drugs.

Gaston took the stand in his own defense. He testified that he never saw the Nike box and did not know the drugs were in the car. He suggested that the box was under the passenger seat instead of in front of it. In rebuttal, however, Wilson testified that he checked and that not enough clearance existed under the seat for the box to fit. Gaston also testified that he had been arrested "numerous times" under the wrong name, "Gadson." He testified he actually did have a valid driver's license, which had recently been reinstated, but that the State had issued it under the wrong name to Timothy Gadson. He acknowledged, however, that he never presented the officers with this recently acquired license.

1. Gaston contends the evidence was insufficient to support his conviction for trafficking, arguing that he testified that he was "totally unaware that drugs were in the automobile." But although Gaston testified he knew nothing about the drugs and never saw the Nike box, which was in plain view, the jury was not required to believe him. "The credibility of the witnesses and the weight to be given the evidence are the sole province of the jury." (Punctuation and footnote omitted.) *Brown v. State*, 254 Ga. App. 345, 346 (1) (562 SE2d 513) (2002). The jury therefore was authorized to reject Gaston's testimony in favor of the evidence presented by the State. The evidence presented was more than sufficient to find Gaston guilty of the charged crimes under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Gaston maintains the trial court erred in denying his motion to suppress evidence because the search of the car violated his rights under the U. S. and the Georgia Constitutions. It is well established that a trial court's order on a motion to suppress will not be disturbed if any evidence exists to support it. *Staley v. State*, 224 Ga. App. 806 (1) (482 SE2d 459) (1997). Here, the trial court ruled that the search was a valid inventory search pursuant to an impoundment when Gaston was arrested.

Gaston argues that the impoundment was unreasonable because the officers could have called his aunt to retrieve the car, rather than having it towed. He testified at trial that he asked them at the scene to do so. We do not agree. Police officers are not required to ask whether an arrestee desires to have someone come and get the car, nor are they required to accede to an arrestee's request that they do so. *State v. King*, 237 Ga. App. 729, 730 (1) (516 SE2d 580) (1999); *Williams v. State*, 204 Ga. App. 372, 374 (419 SE2d 351) (1992). The determinative inquiry is whether impoundment was reasonable, not whether it was absolutely necessary. *King*, supra at 729-730. "A police seizure and inventory is not dependent for its validity upon the absolute necessity for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that." (Citation and punctuation omitted.) *Williams*, supra. Here, the trial court was authorized to find that impoundment was reasonable because it was after 2:00 a.m. and the car was in the roadway.

The fact that the impoundment was reasonable, however, does not end our inquiry. Notwithstanding the trial court's finding, it is plain from the record that the search did not take place after the car was impounded. The drugs were found even before Gaston was arrested. But it is also clear that the Nike box was in plain view. Under the plain view doctrine, officers who observe contraband in plain view are entitled to seize it, provided they are at a place where they are entitled to be and they have not violated Gaston's Fourth Amendment rights in the process of establishing their vantage point. *Gardner v. State*, 255 Ga. App. 489, 493 (1) (566 SE2d 329) (2002).

Here, because Gaston was trembling and obviously extremely nervous, and because he was reluctant to return to his car, the officers had a legitimate reason to look into his car, and they did so from a place where they were entitled to be. Because the drugs were visible to Wilson through the holes in the Nike box, and because a trained narcotics officer also identified the box as a type he had seen used to carry drugs, the officers were entitled to seize it. "Any incriminating evidence they have the fortune to see in plain view may be seized and later admitted as evidence. [Cit.]" *Galloway v. State*, 178 Ga. App. 31, 34 (342 SE2d 473) (1986). "And it holds true whether the object seized is spied with the aid of a flashlight or the naked eye. [Cits.]" Id. at 35.

Therefore, even though we disagree with the trial court's stated rationale for denying the motion to suppress, we hold that the ruling is right for a different reason. "Although the reasons for a trial court's ruling may be wrong, we may still affirm the court's ruling if it is right for any other reason. So even if a trial judge incorrectly denies a motion to suppress on one basis, we may affirm the denial on another

basis." (Citation, punctuation and footnote omitted.) *Rogers v. State*, 253 Ga. App. 863, 865 (2) (560 SE2d 742) (2002).

3. Gaston maintains it was error to permit the State to question the CNT officer about Gaston's invocation of his Fifth Amendment rights. We do not agree.

During cross-examination of Agent Glenn, defense counsel asked whether the agent had spoken with Gaston the night he was arrested. Glenn responded that he read Gaston his *Miranda* rights and that Gaston invoked his rights and refused to talk. On redirect examination, realizing that the door had been opened by the defense, the State then asked Glenn if he had attempted to speak with Gaston and the defense objected, claiming the defense had asked Glenn whether Gaston had been "debriefed," not whether he had been interrogated. The trial court overruled the objection, ruling that the door had been opened by the defense, and the question was again asked and answered. In cross-examining Gaston, the State asked him whether he had told the police the drugs were not his, and Gaston replied simply that he told the officers he did not want them to search the car, and he "didn't know nothing about no drugs."

Gaston argues that the trial judge committed reversible error notwithstanding that the door had been opened by the defense, because this was an improper comment on Gaston's silence. He argues that the trial court should not have allowed the State to pose the question to the CNT agent or, at a minimum, should have charged the jury that a defendant is not required to make a statement to the police. "It has been held to be fundamentally unfair to simultaneously afford a suspect a constitutional right to silence following arrest and yet allow the implications of that silence to be used against him for either substantive or impeachment purposes." (Citations and punctuation omitted.) *Gordon v. State*, 250 Ga. App. 80, 82 (550 SE2d 131) (2001). The prejudicial effect of such comments is greater than its minimal probative value. Id.

But the questioning of the CNT agent was not a comment on Gaston's silence; it simply showed that the officers did not attempt to get a statement from Gaston. Moreover, even if error occurred, it was induced by the defense, which opened the door by asking the agent: "Did you talk to Mr. Gaston that night about the violation?" "A self-induced error is too close to premeditated error, hence beyond further appellate scrutiny." (Citations and punctuation omitted.) *Gordon v. State*, 252 Ga. App. 133, 135 (2) (555 SE2d 793) (2001). See also *Williams v. State*, 225 Ga. App. 319, 322 (4) (483 SE2d 874) (1997).

4. In two enumerations of error, Gaston asserts that the trial court erred in allowing evidence of a similar transaction. He asserts that the prior crime was not similar and that it wrongfully injected his character in issue. These assertions are without merit.

> Independent crimes are admissible to show motive, intent, plan, identity, bent of mind or course of conduct. In order for any independent acts to be admissible, it must be shown that the defendant was the perpetrator of the independent crime and that there is sufficient similarity of the former independent crime that it tends to prove the latter crime.

(Punctuation and footnote omitted.) *Nation v. State*, 252 Ga. App. 620, 622 (1) (556 SE2d 196) (2001). A similar crime need not be identical in every detail. The controlling question is relevance to the issues at trial. Id. And in determining the admissibility of similar transactions, the courts should focus on their similarity, rather than their differences, particularly when the evidence is introduced for the purpose of showing intent, rather than identity or criminal signature. *White v. State*, 225 Ga. App. 74, 75 (2) (483 SE2d 329) (1997).

Here, the similar transaction was introduced to show Gaston's intent, along with his state of mind and motivation. The two crimes involved selling the same controlled substance in the same jurisdiction, and the similar transaction demonstrated Gaston's involvement with and ability to identify crack cocaine, which was relevant to the credibility of his defense that he did not see the drugs in the car. In this case, Gaston denied committing the crime for which he was on trial, and a past conviction involving the sale of cocaine would be very helpful to the jury. The State's need outweighed the prejudice to Gaston, and the trial court's finding that the earlier crime was sufficiently similar was not clearly erroneous. See *Evans v. State*, 235 Ga. App. 577, 581 (3) (510 SE2d 313) (1998); *Cantrell v. State*, 210 Ga. App. 218, 221 (2) (435 SE2d 737) (1993).

5. Gaston also asserts that the State wrongfully injected his character into issue when Glenn testified that he had seen the Nike box before in drug sale cases and when the prosecutor asked Gaston about his prior arrests.

(a) The CNT agent testified that he had

> run across specifically this color Nike box and this style of Nike box at least two or three times before as being a vessel that they deliver drugs in. I don't know if the certain shoe box is the fad at the time, and everybody just decided to utilize that box or what, but I have definitely seen this box used before.

Gaston argues that this evidence was introduced to leave the impression with the jury that Gaston had been involved in other offenses in which the box had been used. He asserts that this was therefore similar transaction evidence, introduced without notifying Gaston or

holding a hearing, as required under Uniform Superior Court Rule 31.3. This assertion is belied by the record. Glenn testified only that during his more than ten years as a police officer he had seen this type of box used two or three times before to carry drugs. He did not imply that on those two or three occasions he had seen Gaston carrying the drugs in this type of box. Moreover, Gaston did not object to this testimony, and he has waived any objection to it.

(b) The State did not place Gaston's character in issue by questioning him about previous arrests. Gaston volunteered on direct examination that he had been arrested numerous times under the wrong name. On cross-examination, the State simply followed up on this direct testimony by further eliciting the same testimony that Gaston had numerous prior arrests. When a defendant testifies and admits prior criminal conduct, he has raised an issue that may be fully explored by the State in its cross-examination. *Jones v. State*, 257 Ga. 753, 759 (1) (b) (363 SE2d 529) (1988).

6. Three enumerations involve the trial court's charge to the jury. Gaston contends the trial court erred in giving charges on parties to a crime and collusion between parties, and in failing to give a charge on bare suspicion. These contentions have no merit.

(a) Gaston argues that a charge on parties to a crime was not warranted because absolutely no evidence was presented that any other specifically named persons were involved in a joint crime. But Gaston argued at the charge conference that his aunt had "equal access" to the car Gaston had borrowed, and he requested charges on mere presence, actual and constructive possession, and equal access. His defense was that other persons owned the cocaine and placed it in the car. The evidence as a whole, including Gaston's defense strategy, strongly suggested that other persons were involved. The trial court therefore correctly charged the jury on equal access and actual and constructive possession, as well as parties to a crime.

(b) The trial court gave the State's requested charge that "where transactions involving relatives are under review, slight circumstances are often sufficient to induce a belief that there was collusion between the parties." This instruction was a correct statement of the law. See *Shropshire v. State*, 201 Ga. App. 421, 422 (411 SE2d 339) (1991). Gaston maintains that this charge was not tailored to the evidence, because no evidence was presented showing that Gaston's aunt was involved with the drugs found in the car. But Gaston himself made repeated references to his aunt. She owned the car and had equal access to it. He testified that the Nike box must have been under the seat and that he had just borrowed the car to go to work, implying that the drugs must have belonged to his aunt. "To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge." (Footnote

omitted.) *Blackford v. State*, 251 Ga. App. 324, 326 (2) (554 SE2d 290) (2001). As some evidence was presented to support it, this charge was sufficiently tailored to the evidence.

Gaston also argues that this charge misled the jury into believing that the State's burden of proof was only "slight evidence." We do not agree. The trial court also charged the jury on the presumption of innocence, reasonable doubt, mere presence, and spatial proximity. The jury instructions cannot be viewed in isolation. Considering the charge as a whole, we find no reasonable likelihood that the jury would have applied the challenged charge in a manner that violates the constitution. *Bridges v. State*, 268 Ga. 700, 703 (492 SE2d 877) (1997).

(c) The trial court gave complete and accurate instructions on reasonable doubt, the presumption of innocence, and mere presence. Since these charges cover the principles of law embodied in Gaston's requested charge on bare suspicion, we find no error in the trial court's refusal to give the requested charge. *Morrison v. State*, 220 Ga. App. 151, 155 (3) (b) (469 SE2d 686) (1996).

7. Citing *Edwards v. State*, 219 Ga. App. 239, 246-247 (8) (464 SE2d 851) (1995), Gaston contends it was error to allow Glenn to testify about the street value of the drugs found in the car, as it was prejudicial and not relevant to the facts of the case. But in *Edwards* we found no error in the introduction of evidence of the street value of seized drugs. And here, as in *Edwards*, no objection was made to the testimony at trial. Moreover, the testimony was relevant to the issues at trial for two reasons. It could have explained the extreme nervousness Gaston displayed when he was stopped. And, as in *Edwards*, it permitted the jury to evaluate the plausibility of Gaston's claim that someone he did not know would place drugs in the car he was driving in plain view without Gaston's knowledge, when those drugs had a street value of approximately $77,500.

8. The remainder of Gaston's enumerations allege various particulars in which his trial counsel rendered ineffective assistance. The standard for proving ineffective assistance of counsel requires a showing both that counsel's performance was deficient and that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). A strong presumption exists that counsel's conduct fell within the broad range of professional conduct. *Harris v. State*, 268 Ga. 412 (490 SE2d 96) (1997). A trial court's ruling on this issue must be upheld unless clearly erroneous. Id. at 412-413. Many of the specific instances cited by Gaston as showing that counsel failed to act to prevent the admission of evidence or to counteract the prosecution's mistakes involve the same issues enumerated by Gaston as errors on appeal. Given our determination that these instances involving the admission of evidence or alleged

prosecutorial mistakes were not error, it follows that trial counsel was not ineffective in failing to prevent or counteract them. We have reviewed Gaston's allegations regarding the alleged ineffective assistance of his trial counsel, and we find them without merit under the *Strickland* standard. The trial court did not err in finding that Gaston received effective assistance from trial counsel.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED SEPTEMBER 19, 2002 —

*Mark J. Nathan*, for appellant.

*Spencer Lawton, Jr., District Attorney, Thomas M. Cerbone, Assistant District Attorney*, for appellee.