## A03A0778. BLACKWOOD v. THE STATE.
(581 SE2d 724)

MIKELL, Judge.

Stanley Alaska Blackwood was convicted of trafficking in cocaine, sentenced to 30 years in confinement, and fined $1,650,052. In his sole enumeration of error, Blackwood contends that the trial court erred in denying his motion to suppress cocaine seized from his alimentary canal. We disagree and affirm.

The evidence adduced at the hearing on the motion to suppress shows that on January 5, 2002, U. S. Customs Inspector Reginald S. Singh was working at baggage claim carousel no. 5 at the Atlanta airport, where luggage was arriving from Jamaica. Singh testified that he noticed Blackwood standing near the carousel with a suitcase. Because Blackwood was not proceeding to customs, Singh approached him and requested his passport and customs declaration. Singh testified that Blackwood refused to make eye contact with him and appeared very nervous. Blackwood had listed a Riverdale address on the declaration form, and he told Singh that he was visiting his cousin. However, Blackwood provided only the name "McKenzie," did not know his cousin's telephone number, and could not describe his cousin's appearance. Upon further questioning, Blackwood said his cousin's name was Derrick Wilson, then George Wilson. Blackwood also said that his cousin was supposed to pick him up at the airport. However, when Singh searched his bag, he found an envelope with the notation, "Holiday Inn, three nights." Blackwood then told Singh he planned to stay at the hotel and if his cousin did not meet him at the airport, the man would find Blackwood at the hotel the next day. Singh testified that he found no contraband in the bag, but he saw that it contained only a few pieces of clothing scattered inside.

Singh found in Blackwood's wallet a receipt for funds that had been sent to him from London. Blackwood's passport showed that he had traveled to England in 2000. According to Singh, Blackwood claimed he knew nothing about the money and knew no one in England. Blackwood's passport also revealed that he had already made two trips to Atlanta in March and September, but he could not provide any details about those trips. Moreover, Blackwood had purchased his current ticket the day before his travel. When asked where he had obtained the funds for the ticket, Blackwood claimed the money had been sent to his cousin's "Aunt Bea" in Jamaica.

Singh conferred with his supervisor, who gave Singh permission to conduct a pat-down search of Blackwood. Nothing illegal was found, and Singh began to suspect that Blackwood was carrying drugs internally. Singh sought Blackwood's consent to have him taken to a medical facility for an x-ray. At first, Blackwood refused. However, after Singh received permission from the chief counsel and the port director to transport Blackwood to a hospital, Blackwood signed a consent form. He was informed that his bowel movements would be monitored at the hospital. Blackwood ultimately passed 48 pellets of cocaine, weighing 468.26 grams.

Blackwood testified that he signed the consent form because he had been detained for four or five hours and was tired and frustrated. He admitted that no one threatened him or made him any promises in order to obtain his consent. Finding that Blackwood was detained for only four hours and forty-five minutes before he signed the consent form, including only two hours after his initial refusal, the trial court ruled that the search and seizure were reasonable under *United States v. Montoya de Hernandez*.[1]

On appeal, Blackwood argues that *Montoya* is distinguishable and merits reversal of the trial court's order. Blackwood is wrong. *Montoya* held that the "detention of a traveler at the border, beyond the scope of a routine customs search and inspection, is justified at its inception if customs agents, considering all the facts surrounding the traveler and [his] trip, reasonably suspect that the traveler is smuggling contraband in [his] alimentary canal."[2] The defendant in *Montoya* arrived from a ten-hour flight from Colombia with a full, stiff abdomen.[3] She refused to consent to an x-ray and was detained for 16 hours until a warrant was sought.[4] Several hours later an internal examination was performed, revealing 88 cocaine-filled balloons in her alimentary canal.[5] The U. S. Supreme Court held that her detention was not unreasonably long under the Fourth Amendment.[6]

Blackwood claims that because his body displayed no outward signs of smuggling, Singh lacked "a particularized and objective basis for suspecting [him] of alimentary canal smuggling."[7] However, the U. S. Supreme Court in *Montoya* recognized that this type of smuggling presents "few, if any external signs."[8] And, federal courts of

---

[1] 473 U. S. 531 (105 SC 3304, 87 LE2d 381) (1985).
[2] Id. at 541.
[3] Id. at 543.
[4] Id. at 542.
[5] Id. at 544.
[6] Id.
[7] (Citations and punctuation omitted.) Id. at 541-542.
[8] Id. at 543.

appeal have found reasonable suspicion of drug smuggling where, as here, no signs appeared on the defendant's body but the defendant gave inconsistent or implausible explanations for his or her travels from known drug cities.[9]

In the case at bar, Blackwood arrived from a known drug source locale and provided several inconsistent statements to a customs inspector. He was allegedly visiting a cousin whose name changed three times during the course of questioning. Blackwood could not account for a receipt for monies from England or for his trip to that country. Neither could he explain his recent travels to Atlanta. He carried only a few pieces of hastily packed clothing and gave an implausible explanation for the source of his funds for his ticket, which he had only purchased a day before. Based on his 31 years of experience, the customs officer then suspected Blackwood of smuggling drugs internally. "In reviewing a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment of the trial court, and the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous."[10] Considering the totality of these circumstances, the trial court did not err in ruling that the decision to detain Blackwood was supported by reasonable suspicion and did not violate the Fourth Amendment.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MAY 2, 2003.

*James W. Bradley*, for appellant.
*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.

---

[9] See, e.g., *United States v. Gonzalez-Rincon*, 36 F3d 859, 864 (9th Cir. 1994); *United States v. Oba*, 978 F2d 1123 (9th Cir. 1992).

[10] (Footnote omitted.) *Gardner v. State*, 255 Ga. App. 489-490 (566 SE2d 329) (2002).