**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 5, 2015**

# In the Court of Appeals of Georgia

A14A2111. CURRY v. THE STATE.

DILLARD, Judge.

Following a jury trial, Darryl Curry was convicted of two counts of trafficking of persons for sexual servitude, two counts of pimping for person under 18, two counts of sexual exploitation of children, two counts of false imprisonment, two counts of cruelty to children in the first degree, two counts of simple battery, and one count of obstruction of a law-enforcement officer. Curry appeals, arguing that the trial court erred by admitting similar-transaction evidence and by instructing the jury in a manner that was inconsistent with the indictment. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that A. E., who is originally from Texas, began running away from home when she was 14 or 15 years old, and eventually, she relocated to Georgia. A. E. testified that she began running away because she had a difficult home life and experienced physical and sexual abuse. When she was almost 16 years old, A. E. joined "the life," which she described as becoming the "property of somebody else." Between the ages of 16 and 17, A. E. worked for eight or nine pimps in Texas and Georgia, and she lost count of how many men she had been sold to for sex. When she was 17 years old, A. E. posted an advertisement online seeking work as a prostitute because she was low on money, and Curry responded. Although she did not remember his exact words, A. E. could tell from Curry's response that he was a pimp and wanted her to work for him.

Subsequently, A. E. met Curry at a hotel, and after a brief conversation, she agreed to go live with him at a residence in Decatur. In the beginning, A. E. had her own bedroom, but later, she moved into Curry's room and began a sexual relationship with him. A. E. felt that she had no choice but to have sex with Curry because she thought he would harm her if she refused.

_____

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

2

While living with Curry, A. E. and the other girls would solicit clients to pay them for sex, and they would have sex with these men at Curry's house in the "work room." Curry set the prices and time frames for A. E. to meet clients, and she was required to give him all of the money that she earned. Additionally, while working for Curry, A. E. was not allowed to leave the house without him, say no to him, or have any money. A. E. testified that Curry provided her with alcohol and drugs, and she could not recall going a day sober.

At some point, Curry instructed A. E. to recruit another girl to work for him, and she contacted her 16-year-old friend, S. S., in an attempt to do so. A. E. lied to S. S. to lure her to Curry's house, but after meeting Curry, S. S. ultimately agreed to move in and begin working for him. And while living with Curry, S. S.—just like A. E.—was sold to men to perform sexual acts, and she too was required to give all of the proceeds to Curry. S. S. testified that she was "very, very scared" of Curry, and that she wanted to go home.

On one occasion, Curry learned that A. E. had communicated with another pimp, and he beat her with a belt and a wire hanger. Nonetheless, she continued to comply with his directives because it was the only way to keep "from getting harmed" and she did not want to "get beat" again. On another occasion, Curry took A. E. and

3

S. S. to a club where he gave them ecstasy, and when they returned home, he "took advantage" of A. E. Later that night, after Curry fell asleep, A. E. ran out of the house half naked and screaming for help. A neighbor heard her screams and called the police, who then transported her to a nearby hospital for examination. The next morning, police officers went to Curry's house, kicked down the door, and found Curry and S. S. inside. After inspecting the home, the officers arrested Curry and took S. S. to a hospital.

Thereafter, Curry was charged with two counts of trafficking of persons for sexual servitude, two counts of pimping for person under 18, two counts of sexual exploitation of children, two counts of false imprisonment, two counts of cruelty to children in the first degree, two counts of aggravated assault, two counts of contributing to the delinquency of a minor, one count of obstruction of a law-enforcement officer, one count of conspiracy to commit false statements, one count of keeping a place of prostitution for person under 18, and one count of giving false information to a law-enforcement officer. Curry moved for a directed verdict as to one charge of contributing to the delinquency of a minor and the charge of conspiracy to commit false statements, and the trial court granted that motion. After a jury trial, Curry was found not guilty of both aggravated-assault charges and one count of

4

contributing to delinquency of a minor, but he was convicted on all remaining counts. This appeal follows.

1. In his first enumeration of error, Curry argues that the trial court violated OCGA § 24-4-404 (b) by admitting, over his objection, the testimony of L. B., a third woman who claimed that Curry sold her to men as a prostitute. We disagree.

At the outset, we note that our review of a trial court's decision to admit similar-transaction evidence is for a "clear abuse of discretion."[2] And here, the record reflects that, prior to trial, the State notified Curry that it intended to present similar-transaction evidence under OCGA § 24-4-404 (b).[3] Specifically, the State planned to present testimony from L. B. that Curry "forced her to perform acts of prostitution" in a "crack house" when she was 17 years old. Curry then filed a motion in limine to exclude this evidence, arguing that it was not being offered for a proper purpose and that any potential relevance of L. B.'s testimony would be substantially outweighed by unfair prejudice. Ultimately, the trial court denied Curry's motion, finding that L.

---

[2] *Jones v. State*, 326 Ga. App. 658, 661 (757 SE2d 261) (2014).

[3] *See* OCGA § 24-4-404 (b) (". . . The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial . . . .").

B.'s testimony was not improper character evidence, but rather, it was admissible to show intent, motive, plan, and identity. Further, the court found that the probative value of this evidence was not substantially outweighed by unfair prejudice.

At trial, L. B. testified that she and her 16-year-old friend met Curry at Underground Atlanta in 2009 and agreed to leave with him. Afterwards, Curry took them to a house, where L. B. lived for about a month, during which time he forced her to have sex with him, and L. B. did not resist because she was frightened of Curry. L. B. described Curry as a "pimp," for whom she earned money as a prostitute against her will. And while L. B. worked for Curry, he set the prices for her services, had control over her at all times, and collected all of the money that she earned.

In considering Curry's argument that L. B.'s testimony was inadmissible, we begin with the text of recently enacted OCGA § 24-4-404 (b),[4] which provides that

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including,

---

[4] Because this case was tried after January 1, 2013, our new Evidence Code applies. *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

6

but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .[5]

And as we have previously explained, because our new Evidence Code is comparable to the Federal Rules of Evidence, this Court will "give consideration and great weight to constructions placed on the Federal Rules by the federal courts."[6] As such, we—like the Eleventh Circuit—employ "a three-part test for evidence of other crimes or acts to be admissible pursuant to Federal Rule of Evidence 404(b),"[7] requiring that

> (1) it must be relevant to an issue other than the defendant's character;
> (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s)

---

[5] OCGA § 24-4-404 (b). Curry correctly notes that, under the old Evidence Code, "course of conduct" and "bent of mind" were listed among the purposes for introducing similar-transaction evidence, but "under the new Evidence Code, 'course of conduct' and 'bent of mind' are no longer acceptable bases for admitting similar transaction evidence." *Frost v. State*, 328 Ga. App. 337, 342 (2) (761 SE2d 875) (2014); *see also Johnson v. State*, 292 Ga. 22, 25 (2) n.3 (733 SE2d 736) (2012).

[6] *Jones*, 326 Ga. App. at 660 (1) (punctuation omitted); *see also Flading v. State*, 327 Ga. App. 346, 351 (2), n.6 (759 SE2d 67) (2014); *Oliver v. State*, 329 Ga. App. 377, ___, n.7 (765 SE2d 606) (2014); *Williams v. State*, 328 Ga. App. 876, 879 (1), n.14 (763 SE2d 261) (2014).

[7] *Jones*, 326 Ga. App. at 660 (1) (punctuation omitted); *see also Lingo v. State*, 329 Ga. App. 528, ___ (765 SE2d 696) (2014) (physical precedent only); *United States v. Edouard*, 485 F3d 1324, 1345 II (C) (1) (11th Cir. 2007) (punctuation omitted).

7

in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Federal Rule of Evidence 403.[8]

As to the first prong of the test, Curry argues that the evidence was not admissible for any proper purpose and served only as improper evidence of his character and propensity to commit the crimes. Further, as to the trial court's finding that the similar-transaction evidence was relevant to prove his intent, he argues that his intent was not at issue because his defense strategy was to show that the victims were not credible, not that he did not intend to commit the crimes charged. This argument, however, is belied by the record. Indeed, contrary to Curry's argument, a defendant who enters a not-guilty plea "makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by

---

[8] *Jones*, 326 Ga. App. at 660 (1) (punctuation omitted); *see also Lingo*, 329 Ga. App. at ___; *United States v. Lamons*, 532 F3d 1251, 1265-66 (II) (B) (11th Cir. 2008). Under OCGA § 24-4-403, which mirrors Federal Rule of Evidence 403, "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Jones*, 326 Ga. App. at 660 (1), n.9 (punctuation omitted); *see also Butler v. State*, 292 Ga. 400, 406 (3) (a), n. 11 (738 SE2d 74) (2013); *Williams*, 328 Ga. App. at 879 (1); *Flading*, 327 Ga. App. at 351 (2); Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 74 (2d. ed. 2014).

qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue."[9]

In the case *sub judice*, Curry pleaded not guilty, thereby making his intent a material issue and placing a substantial burden on the State to prove intent, and he took no affirmative steps to remove intent as an issue.[10] In fact, contrary to Curry's contention that his defense strategy was not to show that he lacked intent to commit the offenses, his defense counsel argued to the jury that the victims were "very close friends" who took advantage of Curry when he was only trying to help them. Suffice it to say, Curry's position that he intended only to help the victims, but not to commit any criminal offenses, squarely challenges the element of intent. And under these circumstances, the trial court did not err in finding that the first prong of the similar-

---

[9] *Edouard*, 485 F3d at 1345 (II) (C) (1) (punctuation omitted); *accord United States v. Delgado*, 56 F3d 1357, 1365 (III) (B) (11th Cir. 1995); *see United States v. Cardenas*, 895 F2d 1338, 1342 (II) (A) (11th Cir. 1990) (explaining that "when a defendant charged with conspiracy enters a not guilty plea, he makes intent a material issue in the case and imposes a substantial burden on the government"); *Johnson v. State*, 276 Ga. App. 505, 510 (4) (623 SE2d 706) (2005) (finding that by pleading guilty, defendant required the State to prove his intent to commit theft, and therefore, similar-transaction evidence was properly admitted).

[10] *See supra* note 9.

transaction test was satisfied because the evidence at issue was admissible for a purpose other than Curry's character.[11]

Curry does not dispute that the second prong of our (and the Eleventh Circuit's) similar-transaction test is satisfied. And as to the third prong, Curry summarily asserts that, because intent was not a disputed issue in the case, the prejudicial effect of L. B.'s testimony substantially outweighed its probative value. But we have already determined that Curry's criminal intent was indeed a material issue in this case, and he provides no further argument or citation to authority to support his contention that the similar-transaction evidence was inadmissible on this basis. Thus, Curry has waived this argument.[12]

Lastly, Curry maintains that—unlike A. E. and S. S.—L. B. testified that she did not solicit clients on chat lines, he did not give her drugs, and he made her walk

---

[11] *See Jones*, 326 Ga. App. at 660 (1) n.9. Because we find that the similar-transaction evidence was relevant to show Curry's intent, we need not address the trial court's findings that it was also relevant to show motive, plan, and identity.

[12] *See Mathis v. State*, 299 Ga. App. 831, 839 (2) (c) (684 SE2d 6) (2009) (finding that because appellant "failed to support [his] assertion with cogent argument or citation of authority or to cite to the record to demonstrate where the purportedly improper testimony was admitted, we will not consider it"); *McBee v. State*, 296 Ga. App. 42, 46 (2) (b) (673 SE2d 569) (2009) (finding that appellant waived any challenges to the sufficiency of the evidence because the appellant failed to support his claim with any cogent argument or citation to authority).

10

the streets to meet potential clients. But to the extent Curry argues that his offenses against L. B. and the charged offenses are not sufficiently similar to be admissible,[13] we are not persuaded.

As we have previously explained, there is no requirement that "the prior crime or transaction be absolutely identical in every respect."[14] Moreover, when considering the admissibility of similar-transaction evidence, "the proper focus is on the similarities, not the differences, between the separate crime and the crime in question."[15] Here, as noted *supra*, L. B. testified that Curry sold her as a prostitute and held her against her will, just like he did with the victims in this case. Indeed, the evidence presented below shows that Curry sold all three victims to men as prostitutes; required them to solicit their own clients; controlled the time, prices, and

---

[13] *See Humphrey v. State*, 249 Ga. App. 805, 807 (1) (549 SE2d 144) (2001) (noting that to be admissible as a similar transaction, prior offense must both be offered for a proper purpose and there must be a sufficient connection between that offense and the crime charged so that proof of the former tends to prove the latter).

[14] *Williams v. State*, 263 Ga. App. 22, 24 (2) (587 SE2d 187) (2003) (punctuation omitted); *see Scruggs v. State*, 295 Ga. 840, 841 (2) (764 SE2d 413) (2014); *Humphrey*, 249 Ga. App. at 807 (1).

[15] *Evans v. State*, 300 Ga. App. 180, 182 (684 SE2d 311) (2009) (punctuation omitted); *see Scruggs*, 295 Ga. at 841 (2); *Johnson v. State*, 289 Ga. 22, 24 (2) (709 SE2d 217 (2011); *Whitehead v. State*, 287 Ga. 242, 249 (3) (695 SE2d 255) (2010); *Garvin v. State*, 292 Ga. App. 813, 814 (665 SE2d 908) (2008).

location for their services; exerted control over them at all times; kept all proceeds; and prevented them from leaving his house through threats and intimidation. And given the striking similarities between these offenses, we conclude that the extrinsic evidence of Curry's prior bad acts was sufficiently similar to the charged offenses to be admissible under OCGA § 24-4-404 (b).[16]

---

[16] *See Scruggs*, 295 Ga. at 840-41 (2) (holding that the defendant's attempt to burn his sister's house down was sufficiently similar to his charged offense of malice murder in connection with torching and burning his longtime girlfriend to be admitted as similar-transaction evidence); *Thompson v. State*, 323 Ga. App. 790, 793-94 (748 SE2d 465) (2013) (finding that three acts of forgery were sufficiently similar when, in each case, defendant participated with others in attempts to cash fraudulent payroll checks at small convenience stores, the checks were for similar amounts, and the checks were all purportedly drawn from the same account); *Walley v. State*, 298 Ga. App. 483, 484-85 (1) (680 SE2d 550) (2009) (finding that rape of an adult woman was sufficiently similar to sex acts committed against a minor when both victims were women with whom defendant had a prior good relationship and over whom he had a position of authority); *Williams*, 263 Ga. App. at 24 (2) (finding that prior acts of child molestation were sufficiently similar to a later act of child molestation even though the sexual activity was different; the prior victim was a non-family member and the later victim was the defendant's daughter; and the prior bad act occurred ten years earlier); *Garvin*, 292 Ga. App. at 815 (finding that two crimes were sufficiently similar when both armed robbery victims were over 55 years of age and lived alone, and in both cases, the defendant initially disavowed any knowledge of the crime before later claiming mere presence at the crime scene); *Evans v. State*, 235 Ga. App. 577, 581 (3) (510 SE2d 313) (1998) (finding that two acts of selling cocaine were sufficiently similar even though the two sales were made in different ways and in different locations); *see also Delgado*, 56 F3d at 1366 (III) (B) (noting that "when other crimes evidence goes to intent rather than identity a lesser degree of similarity between the charged crime and the uncharged crime is required").

Thus, for all of the foregoing reasons, we conclude that the trial court did not abuse its discretion in finding that Curry's prior bad acts were admissible under OCGA § 24-4-404 (b).

2. Next, as to the false-imprisonment counts, Curry argues that the trial court erred by charging the jury that unlawful detention may mean that the victim's will is overborne by her fear of the defendant causing her harm. Specifically, he claims that this instruction allowed the jury to convict him based on a theory of guilt that the grand jury never authorized. Again, we disagree.

As an initial matter, we note that appellate review of a jury charge is *de novo*.[17] And here, in Counts 7 and 8 of the indictment, the grand jury charged Curry "with the offense of FALSE IMPRISONMENT in violation of OCGA § 16-5-41 for the said accused person . . . in violation of the personal liberty of [the victim], did unlawfully confine [her] without legal authority." Then, at the conclusion of trial, and over Curry's objection, the trial court gave the following jury instruction:

> Counts 7 and 8 charge [Curry] with the offense of false imprisonment.
> A person commits the offense of false imprisonment when, in violation
> of the personal liberty of another, he confines or detains such person

---

[17] *Jordan v. State*, 322 Ga. App. 252, 255 (4) (a) (744 SE2d 447) (2013).

13

without legal authority. Unlawful detention may mean when a victim's will is overborne by her fear of the defendant causing her physical harm.

In Georgia, a person commits the offense of false imprisonment when, "in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."[18] Furthermore, as our Supreme Court has explained:

> [I]f a jury charge recites the entire statutory definition of a crime and the indictment does not, the deviation may violate due process unless a limiting instruction is given. Without the remedial instruction, the conviction is defective because there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment.[19]

However, it is a fundamental rule that jury instructions "must be read and considered as a whole in determining whether the charge contained error."[20] And pretermitting

---

[18] OCGA § 16-5-41 (a).

[19] *Hall v. Wheeling*, 282 Ga. 86, 86 (1) (646 SE2d 236) (2007) (punctuation omitted); *see also Martin v. State*, 303 Ga. App. 117, 120 (3) (692 SE2d 741) (2010) (explaining that "[a] criminal defendant's right to due process may be endangered when an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment" (punctuation omitted)).

[20] *Alexander v. State*, 308 Ga. App. 245, 246 (707 SE2d 156) (2011) (punctuation omitted); *see also Campbell v. State*, 292 Ga. 766, 769 (3) (740 SE2d

whether the trial court erred in the case *sub judice*, it cured any defect in its jury charge on false imprisonment by instructing the jury that the State must prove every material allegation in the indictment beyond a reasonable doubt, further instructing that the jury could only find the defendant guilty if it found beyond a reasonable doubt that he committed the crime charged, and sending the indictment out with the jury during its deliberations.[21]

For all of the foregoing reasons, we affirm Curry's convictions.

---

115) (2013); *Lee v. Swain*, 291 Ga. 799, 800 (2) (a) (733 SE2d 726) (2012); *Guajardo v. State*, 290 Ga. 172, 176 (4) (718 SE2d 292) (2011).

[21] *See Wheeler v. State*, 327 Ga. App. 313, 319-20 (3) (758 SE2d 840) (2014) ("[I]n the case *sub judice*, the trial court instructed the jury that the State had the burden of proving every material allegation in the indictment beyond a reasonable doubt, further instructed that the jury could only find the defendant guilty if it found beyond a reasonable doubt that he committed the offenses 'as described in the indictment,' and sent the indictment out with the jury during its deliberations. Accordingly, these instructions, when considered in their entirety, cured any potential error pertaining to the enticing-a-child-for-indecent-purposes charge."); *Machado v. State*, 300 Ga. App. 459, 462-63 (5) (685 SE2d 428) (2009) (finding that any potential problem with a child-molestation charge was cured when "the trial court read the indictment to the jury, instructed the jury that the state had the burden of proving every material allegation in the indictment beyond a reasonable doubt and sent the indictment out with the jury during its deliberations"); *Heath v. State*, 291 Ga. App. 594, 597 (5) (662 SE2d 362) (2008) (finding that a "potential due process violation can be cured if the trial judge . . . gives a limiting instruction directing the jury to consider only whether the defendant committed the offense charged in the indictment").

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*