**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 4, 2018**

# In the Court of Appeals of Georgia

A18A1281. VASS v. THE STATE.

MERCIER, Judge.

A jury found Christopher Vass guilty of aggravated assault and possession of a firearm during the commission of a felony. He appeals, challenging the sufficiency of the evidence to support the convictions and the admission of other crimes evidence and expert testimony regarding domestic violence. Finding no basis for reversal, we affirm.

1. Vass's challenge to the sufficiency of the evidence is without merit.

When a criminal conviction is appealed, the appellant no longer enjoys a presumption of innocence. And the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We do not weigh the evidence or determine

witness credibility, and the jury's verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

*Belcher v. State*, 344 Ga. App. 729, 731 (812 SE2d 51) (2018) (punctuation, footnotes and emphasis omitted).

Viewed in the light most favorable to the prosecution, the evidence at trial included the following. S. G. testified that she started dating Vass in 2012 and was in a relationship with him for several years. When Vass and S. G. had disagreements, "sometimes it would get physical," and Vass would strike S. G. with his hands. Vass hit S. G. on several occasions. Asked on direct examination why she stayed in the relationship, S. G. responded that she loved Vass.

S. G. testified that on May 8, 2015, she and Vass were traveling in S. G.'s vehicle when they began arguing. They arrived at an apartment complex where Vass's friend D. Y. lived, and Vass parked the vehicle. Vass retrieved a handgun from a compartment in the rear of the vehicle; S. G. had not known there had been a gun in the compartment. Vass then walked toward D. Y.'s apartment. S. G. followed Vass up a staircase, telling him that their relationship "[was] not working," that she wanted him to return her belongings, and that she would leave him alone. Vass turned to face

2

S. G., told her she was not getting anything back, pulled a gun from behind his back, and pointed it at her. S. G. heard a sound, felt "heat," and asked Vass if he shot her. Vass replied, "Yes," turned around, and entered D. Y.'s apartment. S. G., who was shot in the chest, walked to the van and started to drive around the apartment building. Vass ran to the van, moved S. G. to a passenger seat, and drove to DeKalb Medical Center. While en route, Vass phoned D. Y. and told him to "get rid of the gun, [and that] it was under the mattress." Vass told S. G. to "make something up" about how she got shot. When they arrived at the hospital, Vass carried S. G. into the emergency room, announced that she had been shot, and left her there. Because the gunshot wound was so severe, S. G. was rushed by ambulance from that hospital to a trauma unit at Grady Memorial Hospital ("Grady Memorial").

A trauma surgeon who examined S. G. in Grady Memorial's emergency room on May 8, 2015 testified that S. G. sustained a gunshot wound to her chest and a lacerated liver. The surgeon classified S. G.'s wound as a "level one," which is the "highest level of acuity," meaning that the injury "may result in either serious harm or even death." S. G. was treated and monitored in the hospital, then discharged several days later.

3

When police officers questioned S. G. during her hospitalization about the gunshot wound, she did not tell them that Vass shot her. Instead, she stated that she had been struck by a stray bullet while standing outside her vehicle. Weeks later, on May 26, 2015, S. G. told police that Vass had shot her. Then, after Vass was arrested for the shooting, S. G. went to the district attorney's office and asked that the charges be dropped, because S. G. "just wanted [Vass] to come home." At trial, S. G. testified that Vass had shot her during the argument (as set out above). When asked at trial why she did not report that initially and why she requested that the charges be dropped, S. G. replied, "because [she] loved him" and hoped that they would get back together.

At trial, as other acts evidence, C. T. testified that she had been in a romantic relationship with Vass, and that the relationship ended in 2006, soon after their child was born. In 2007, C. T. and her mother went to Vass's grandmother's home to pick up the child. An argument ensued between Vass and C. T., and Vass "pulled out something" that "look[ed] like a . . . handgun." Vass then fled on foot. C. T.'s mother phoned police. When the prosecutor asked C. T. if she remembered telling the police and the prosecutor that Vass actually pointed a handgun at her, C. T. replied that she did not remember saying that. C. T. and her mother reported the incident to the police

4

that day. C. T. did not later speak to police officers or contact anyone else about the incident; she "just moved on." (In the hearing on the motion, defense counsel informed the trial court that the charges filed in that case, aggravated assault and pointing a pistol at another, were dismissed.)

At trial, the State called a mental health clinician to testify as an expert regarding domestic violence. The mental health clinician testified that she had a master's degree in clinical community counseling, was employed at a local non-profit domestic violence organization, and worked with victims of trauma and "extreme abuse." She assisted in the treatment of family violence victims and, at the time of trial, had been working in that capacity for 16 years, conducted and underwent training in the areas of abuse and domestic violence, and helped build a "victim-centered" temporary protective order program that "is considered a model for the nation." The trial court qualified the mental health clinician as an expert in the area of domestic violence.

When asked to explain the term "domestic violence," the mental health clinician replied that "domestic violence," a term "that's used interchangabl[y]" with "intimate partner violence," refers to people who are involved in a domestic relationship or are dating, and not necessarily living together, in which one party is perpetuating violence against another. She explained that such relationships sometimes include a "cycle of

violence," in which a violent incident is followed by a "honeymoon phase" that may include apologies and forgiveness, then an improvement, a rebuilding of tension, and another incident of violence. The mental health clinician testified that it is common for a victim to try to protect the abuser, to not report the abuse to law enforcement, and to change his or her story or recant a report of abuse. She added that a victim may engage in such conduct as a survival tactic or a coping mechanism, or as a means of staying in a relationship he or she does not want to end.

The indictment pertinently alleged that Vass committed the offense of aggravated assault by assaulting S. G. with a deadly weapon and that he possessed a firearm during the commission of a felony (aggravated assault). See OCGA §§ 16-5-21 (a) (2), 16-11-106 (b) (1). "[T]he testimony of a single witness is generally sufficient to establish a fact." *Belcher*, supra at 731 (1) (punctuation and footnote omitted). The credibility of a witness is a matter for the trier of fact. OCGA § 24-6-620. The evidence at trial was sufficient to authorize a rational trier of fact to find Vass guilty beyond a reasonable doubt of the offenses for which the jury returned verdicts of guilt. See generally *Barnes v. State*, 296 Ga. App. 493, 495 (675 SE2d 233) (2009); *Daniels v. State*, 302 Ga. 90, 93 (1) (805 SE2d 80) (2017).

6

2. Vass contends that the trial court erred by allowing the State to introduce, pursuant to OCGA § 24-4-404, evidence that he previously pointed a gun at C. T. (his former girlfriend and the mother of his child) during an argument. He asserts that the probative value of that evidence was outweighed by its prejudicial effect.[1] The trial court did not abuse its discretion.

Rule 404 (b) of Georgia's new Evidence Code provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Even relevant evidence offered for a proper purpose under Rule 404 (b) may be excluded under OCGA § 24-4-403 ("Rule 403"), however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403.

---

[1] Because Vass's trial was held after January 1, 2013 (July 5, 2016), Georgia's new Evidence Code governs our resolution of the evidentiary issues raised in this appeal. See *Revere v. State*, 302 Ga. 44, 47 (2) (805 SE2d 69) (2017).

7

*State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015) (citation and punctuation omitted).

In determining the admissibility of other acts evidence pursuant to Rules 403 and 404 (b), we apply a three-prong test. Id., citing *Bradshaw v. State*, 296 Ga. 650, 656 (769 SE2d 892) (2015). Under this test, for the other acts evidence to be admissible,

> the State must make a showing that: (1) evidence of extrinsic, or other, acts is relevant to an issue other than a defendant's character, see Rule 404 (b); (2) the probative value of the other acts evidence is not substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403; and (3) there is sufficient proof so that the jury could find that the defendant committed the act in question.

*Jones*, supra at 158-159 (1) (citations omitted). We will not overturn a trial court's decision to admit other acts evidence unless there is a clear abuse of discretion. Id. at 159 (1).

In arguing its Rule 404 (b) motion, the State asserted that during an argument Vass pulled out a black handgun and threatened C. T., after which C. T. phoned police and filed a police report. The State indicated that C. T. would testify about the incident at trial. The State argued that the other acts evidence was relevant to the issue

of identity because Vass denied being the person who shot S. G., and it was relevant to the issue of intent because it showed Vass's "intent[] to show his power and control over a significant partner." In deciding to admit the other acts evidence, the trial court found that the evidence was relevant to the issues of intent and identity, that the probative value of the other acts evidence was "greater . . . because [S. G.] has changed her story" several times, and that the State had sufficient evidence to show that Vass committed the other acts. Before C. T. testified, the court instructed the jury that it was for the jury to determine whether Vass committed the other acts and, if it found that he did, it could consider the other acts evidence only for a limited purpose.

As to the first prong of the test, we find no abuse of discretion in the trial court's determination that evidence of the prior incident was relevant, as that evidence had a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Jones*, supra at 159 (2) (footnote and punctuation omitted). The other acts evidence was admitted for the purpose of establishing Vass's intent (or identity) in committing aggravated assault on S. G., and a jury could infer from his intent to assault a former girlfriend with a gun during an argument that he possessed the requisite intent on this occasion. See generally *Jones*, supra at 160 (2); *Gunn v. State*,

9

342 Ga. App. 615, 620-621 (1) (804 SE2d 118) (2017); *Johnson v. State*, 340 Ga. App. 429, 433 (2) (a) (797 SE2d 666) (2017). Although Vass asserts that the prior acts and the charged crimes were dissimilar in some respects, the crimes were not required to be identical for evidence of the other acts to be admissible. See *Curry v. State*, 330 Ga. App. 610, 615 (1) (768 SE2d 791) (2015). The prior acts were sufficiently similar to the charged offenses to be admissible. See id. at 616.

As to the second prong of the test, the trial court did not err in its evaluation of the probative value versus the prejudicial value of the other acts evidence. "Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value." *Olds v. State*, 299 Ga. 65, 75 (786 SE2d 633) (2016). Additionally, the more strongly an issue is contested, the greater the justification for admitting other acts evidence. *Dixon v. State*, 341 Ga. App. 255, 261 (1) (b) (800 SE2d 11) (2017). In close cases, the balance is to be struck in favor of admissibility. *Turner v. State*, 345 Ga. App. 427, 430-431 (1) (811 SE2d 97) (2018). In the instant case, the State's need for the evidence was great because Vass denied shooting S. G. and the defense questioned her credibility based on her changing narrative regarding who shot her. Under the circumstances, we find no abuse of the

10

trial court's discretion in its application of the balancing test. See *Brannon v. State*, 298 Ga. 601, 608 (4) (783 SE2d 642) (2016); *Dixon*, supra at 262 (1).

"Under the third prong of the test, there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the other acts in question." *Silvey v. State*, 335 Ga. App. 383, 388 (1) (c) (780 SE2d 708) (2015) (citations and punctuation omitted). It was in the trial court's discretion to find that there was sufficient proof from which the jury could conclude that Vass committed the acts of which C. T. had accused him. Given the State's proffer that C. T. would testify at trial and identify Vass as the person who "pulled a . . . handgun at her, and . . . threatened her," we find no abuse of discretion. See *Pike v. State*, 302 Ga. 795, 801 (4) (809 SE2d 756) (2018).

3. Vass contends that the trial court erred by admitting "'expert evidence' of domestic violence" when Vass "was not charged with domestic violence." This contention is without merit.

At trial, the trial court qualified the mental health clinician, without objection, as an expert in domestic violence. The mental health clinician explained that the term "domestic violence" is "used interchangabl[y]" with the term "intimate partner violence," and that the terms refer to people involved in a domestic relationship or who

11

are dating, in which one person perpetuates violence against another. She testified about the "cycle of violence," the behavior of domestic or intimate partner, and why such individuals might not report abuse and might give contradictory statements regarding about how they were injured. Vass did not object to the testimony.

Under the revised Evidence Code, we review the unobjected-to testimony for plain error. *Gipson v. State*, 332 Ga. App. 309, 314 (3) (772 SE2d 402) (2015). "The bar for plain error is a high one[.]" *Brewner v. State*, 302 Ga. 6, 12 (III) (804 SE2d 94) (2017).

> To rise to the high level of plain error, the error must be "one that is so clearly erroneous that it creates a likelihood of a grave miscarriage of justice or seriously affects the fairness, integrity, or public reputation of the judicial proceeding," and the "appellant must show that the error caused him harm, i.e., that the error likely affected the outcome at trial."

*Gipson*, supra (citation omitted).

"Expert testimony is admissible to explain the behavior of a domestic violence victim who does not report abuse or leave the abuser," *Brown v. State*, 325 Ga. App. 237, 244 (2) (b) (750 SE2d 453) (2013) (punctuation and footnote omitted), and to explain a domestic violence victim's contradictory statements about what happened.

12

*Gipson*, supra at 315 (3). Here, the expert's testimony was relevant to explain the reasons a victim (here, S. G. or C. T.) might not report the abuse or might give contradictory statements about what happened. See id.

Vass cites no authority for his contention that expert testimony regarding domestic violence is not relevant unless the defendant was specifically charged with a "domestic violence" crime. In any event, the mental health clinician in this case testified that the "cycle of violence" principles apply to intimate relationships (not only relationships where the parties live together), and the evidence established that Vass had an intimate relationship with S. G. (as well as with C. T.). Thus, the trial court committed no clear or obvious error, much less plain error, in admitting the expert's testimony. See *Gipson*, supra at 316.

*Judgment affirmed. Dillard, C. J., and Doyle, P. J., concur.*