**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 6, 2020**

# In the Court of Appeals of Georgia

A19A2332. MOORE v. THE STATE.

MERCIER, Judge.

Laronda Moore and Eric Robertson were indicted, individually and as parties to a crime, for trafficking of persons for sexual servitude and cruelty to children (second degree). The jury found Moore guilty of both crimes.[1] The trial court imposed a sentence of 25 years on the trafficking count and 10 years on the child cruelty count. Moore appeals following the denial of her motion for new trial, contending that the evidence was insufficient to support the trafficking conviction, the court erred in its jury instructions, and trial counsel provided ineffective assistance. Finding no basis for reversal, we affirm.

---

[1] Robertson was also found guilty of both crimes, but his case is not before us in this appeal.

Viewed in the light most favorable to the jury's verdict, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018), the trial evidence showed the following. In January 2018, 17-year-old B. E. phoned her mother to report that the couple with whom she had been living, Moore and Robertson, were forcing her to engage in sexual activity with men for money. B. E. escaped from their house by running out of the back door of the house and through the woods. B. E. and her mother contacted police the same day.

B. E. testified that in the summer of 2017, she stopped living with her mother and began staying "[w]herever [she] could find a place to sleep," including outdoors. B. E. met Moore and Robertson through Moore's teenage son, with whom B. E. was acquainted. In October 2017, Moore and Robertson took B. E. to their house, where they immediately began using her to make money for them through sexual acts. B. E. thought that Moore and Robertson cared about her, and Moore sometimes treated her as a daughter. But Moore told B. E. that if she was going to live with them, she needed to make money. When B. E. said she did not want to perform sex acts for money, Moore told her she could get a job when she was 18 years old.

Moore and Robertson used a dating app to find men to have sex with B. E.; when the men came to the house and engaged in sexual activity with her, B. E. put the

2

money they gave her under Moore's bedroom door or left it in the bathroom, as Moore had instructed. Moore set the prices for the sex acts and told B. E. what to do with and say to the men. The couple also took B. E. to different locations, where they told people, "Hey, she . . . for sale." Moore and Robertson kept the money that the men paid. When B. E. failed to make money, Moore hit her, usually in the face. Moore also yelled at B. E. and called her names. On different occasions, Robertson struck B. E., gave her a "busted nose" and swollen eye, and pushed her into a wall.

When asked if Moore and Robertson ever gave her drugs or alcohol, B. E. testified that they gave her "Gucci," which she said was "[s]ynthetic marijuana," for her to smoke approximately twice each day. B. E. once became sick and lost consciousness as result of smoking the synthetic marijuana. A search of the cell phone Moore used revealed text messages stating: "I got a . . . girl that does business. If you want some this morning she pretty. . . .She about money," followed by text messages that listed prices for various sex acts and asked, "What would you like?"

1. Moore contends that the evidence was insufficient to prove the offense of trafficking of persons for sexual servitude. We disagree.

OCGA § 16-5-46 (c) (1) (2017) provides: "A person commits the offense of trafficking an individual for sexual servitude when that person knowingly . . .

3

[s]ubjects an individual to or maintains an individual in sexual servitude." OCGA §

16-5-46 (a) (8) (2017) provides, in pertinent part:

> "Sexual servitude" means any sexually explicit conduct or performance involving sexually explicit conduct for which anything of value is directly or indirectly given, promised to, or received by any individual, which conduct is induced or obtained: (A) [b]y coercion or deception;[or] (B) [f]rom an individual who is under the age of 18 years[.]

In Count 1 of the indictment, the State charged Moore with violating OCGA § 16-5-46 (c), alleging that on January 1, 2018, and no later than January 9, 2018, she "did knowingly subject and maintain [B. E.], an individual under 18 years of age during all of the events alleged, in sexual servitude by coercion and deception[.]" Moore argues that based on the language of the indictment, the State was required to prove that B. E. was under 18 *and* that Moore subjected her to sexual servitude by either coercion or deception, i.e., as required by OCGA § 16-5-46 (f) (4) (2017).[2]

_____

[2] Notably, Moore does not argue that the State was required to prove both coercion *and* deception. Indeed, although the indictment used the conjunction "and," it was not incumbent on the State to prove that Moore used both methods to commit the crime. See *Gordon v. State*, 199 Ga. App. 704, 705 (1) (406 SE2d 110) (1991) ("When an indictment charges a crime was committed in more than one way, proof that it was committed in one of the separate ways or methods alleged in the indictment" is sufficient, and it is "not incumbent upon the State to prove that [the]

4

Moore asserts that, even assuming that she subjected B. E. to sexually explicit conduct or performance, the State failed to prove deception. Moore makes no argument regarding coercion - but OCGA § 16-5-46 (f) (4) (2017) requires proof of either coercion *or* deception. Evidence of coercion would have sufficed. See generally *Gordon*, supra (the State was not required to prove that the defendant committed a crime in more than one manner where the indictment charged that the crime was committed in more than one way; proof that the crime was committed in one of the methods alleged was sufficient).

OCGA § 16-5-46 (a) (1) (A) (2017) defines the term "[c]oercion," as used in the trafficking statute, to include "causing or threatening to cause bodily harm to any individual[.]" "[W]hether [Moore's] actions were sufficient to compel a reasonable person in [B. E.'s] position to perform . . . the alleged acts of sexual servitude was a question of fact for the jury to consider under the totality of the circumstances." *Lemery v. State*, 330 Ga. App. 623, 628 (1) (768 SE2d 800) (2015) (footnote omitted). The jury was authorized to find from the evidence presented that Moore used coercion to subject B. E. to sexual servitude and that Moore was guilty beyond

_____

defendant" committed the crime in more than one way.).

5

a reasonable doubt of trafficking as alleged in the indictment. See generally *Grace v. State*, 347 Ga. App. 396, 397-399 (1) (819 SE2d 674) (2018).

2. Moore contends that the trial court erred in its jury instructions, such that there was a fatal variance between the indictment and the jury charge regarding trafficking of persons for sexual servitude. She asserts that the court's instruction tracked the "general trafficking" language of OCGA § 16-5-46 (a) (8) (2017) (involving a victim who was coerced or deceived),[3] but that the indictment tracked the language of OCGA § 16-5-46 (f) (4) (involving a victim who was under 18 *and* was coerced or deceived), with the latter subsection providing for harsher sentencing. According to Moore, the instruction was not consistent with either the indictment or the sentence imposed, and she may have been convicted of committing the crime in

---

[3] After defining the offense of trafficking an individual for sexual servitude under OCGA § 16-5-46 (c), the court defined "sexual servitude" as meaning "any sexually explicit conduct or performance involving sexually explicit conduct for which anything of value is directly or indirectly given, . . . which conduct is induced or obtained by coercion or deception or from an individual who is under the age of 18 years[.]" See OCGA § 16-5-46 (a) (8) (A),(B) (defining sexual servitude).

OCGA § 16-5-46 (f) (3) (2017) pertinently provides that any person who violates paragraph (1) of subsection (c) of this code section shall be punished by imprisonment for 10 to 20 years.

OCGA § 16-5-46 (f) (4) (2017) pertinently provides that any person who violates paragraph (1) of subsection (c) of this Code section against an individual under the age of 18 years and the individual was coerced or deceived into such violation shall be punished by imprisonment for 25 to 50 years or life.

6

a manner other than the one for which she was indicted; in other words, the jury may have found that B. E. was under 18 *or* that she was coerced or deceived, when the indictment and statutory subsection under which Moore was sentenced required findings both that B. E. was under 18 *and* that her conduct was obtained by coercion or deception.

Because Moore did not object to the court's jury instruction at trial, the matter may only be reviewed for plain error. See OCGA § 17-8-58 (b); *Givens v. State*, 294 Ga. 264, 266 (2) (751 SE2d 778) (2013).

> To show plain error, [Moore] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected [her] substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016) (citation and punctuation omitted). "Satisfying all four prongs of this standard is difficult, as it should be." Id. (citation and punctuation omitted). In this case, it is unlikely that the error in the instruction affected the outcome of the proceedings.

> Where the indictment charges a defendant committed an offense by one method, it is reversible error for the court to instruct the jury that the offense could be committed by other statutory methods with no limiting

7

instruction. The defect is cured, however, where the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.

*Sharpe v. State*, 291 Ga. 148, 151 (4) (728 SE2d 217) (2012) (citation and punctuation omitted).

In its charge to the jury, the trial court informed the jury of the crimes for which Moore was indicted, instructed the jury that the indictment and the plea formed the issues to be decided, properly instructed the jury as to the burden of proof, and gave a copy of the indictment to the jury to use during deliberation. The court thus cured the defect. See id. Moreover, there was evidence from which the jury was authorized to find both that B. E. was under the age of 18 at the time of the charged offenses and that Moore induced or obtained B. E.'s sexual servitude by coercion or deception. We find no evidence that the jury found Moore guilty of a crime not alleged in the indictment. See id.; *Rowland v. State*, 349 Ga. App. 650, 654-655 (4) (825 SE2d 231) (2019).

3. Moore alleges seven instances of ineffective assistance of trial counsel.

To prevail on her claim of ineffective assistance,

8

[Moore] must prove both that the performance of [her] lawyer was deficient and that [she] was prejudiced by this deficient performance. *Strickland v. Washington* [cit.]. To prove that the performance of [her] lawyer was deficient, [Moore] must show that the lawyer performed his [or her] duties at trial in an objectively unreasonable way, considering all the circumstances[.] . . .And to prove that [she] was prejudiced by the performance of [her] lawyer, [Moore] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden, although not impossible to carry, is a heavy one.

*Lupoe*, supra at 239-240 (2) (citations and punctuation omitted). "[I]n examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 240 (2) (citation omitted). "In reviewing the trial court's decision, [an appellate court] accept[s] the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) (citations and punctuation omitted).

(a) Moore contends that her trial counsel provided ineffective assistance by failing to object to the jury instruction at issue in Division 2, above. However, as explained in that division, and reading the instruction in context of the whole jury

9

charge, Moore cannot show a reasonable probability that the result of the trial would have been different had counsel objected. See generally *Bell v. State*, 352 Ga. App. 802, 809 (2) (a) (835 SE2d 697) (2019).

(b) Moore contends that her attorney was ineffective by not filing a special demurrer when the indictment failed to specify the manner in which she allegedly committed the crimes of trafficking of persons (Count 1) or child cruelty (Count 2). She asserts that OCGA § 16-5-46 (c) (2017) sets out many ways in which the offense of trafficking of persons can be committed, but that the indictment did not specify which way Moore allegedly committed the crime. As to Count 2, she argues that OCGA § 16-5-70 (c) sets out various ways in which the offense of cruelty to children can be committed, though the indictment did not specify which way Moore allegedly committed the crime. Counsel was not deficient in this regard.

Count 1 of the indictment alleged that Moore committed the offense of trafficking of persons for sexual servitude by subjecting and maintaining B. E., an individual under the age of 18 during the events alleged, in sexual servitude by coercion and deception, in violation of OCGA § 16-5-46 (c). Count 2 alleged that Moore committed the offense of cruelty to children in the second degree in that she "did, with criminal negligence, cause [B. E.], a child under the age of eighteen years

10

. . ., cruel and excessive physical and mental pain by requiring her to have sex for money, threatening to batter her, and battering her, in violation of OCGA § 16-5-70 (c)[.]"

> An indictment charging the violation of a statutory offense shall be deemed sufficiently technical and correct if it describes the offense in the language of the statute or so plainly that the nature of the offense charged may easily be understood by the jury. And an indictment comports with constitutional due process and is sufficient to withstand a special demurrer if it contains the elements of the offense charged, sufficiently informs the defendant of what [she] must be prepared to defend against, and in the event of another prosecution for the same offense, enables the defendant to determine accurately whether [she] may plead a former conviction or acquittal.

*Smith v. State*, 303 Ga. 643, 647 (II) (A) (814 SE2d 411) (2018) (citations and punctuation omitted).

In this case, Counts 1 and 2 tracked the language of the applicable statutes and alleged all of the essential elements of the offenses charged.[4] The indictment also provided details of the offenses in terms clear enough to be easily understood by the

---

[4] OCGA § 16-5-70 (c) provides: "Any person commits the offense of cruelty to children in the second degree when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain."

11

jury and by Moore, and it adequately informed her of the crimes with which she was charged so that she could prepare a defense and safeguard against double jeopardy. See *Smith*, supra; *State v. Tate*, 262 Ga. App. 311, 313 (2) (585 SE2d 224) (2003). The indictment was thus sufficient to withstand a special demurrer, and Moore's counsel was not ineffective for failing to challenge the indictment. See *Smith*, supra.

(c) Moore claims that her counsel was ineffective because he failed to request that the two counts be merged for sentencing purposes. She argues that all of the elements of Count 2 (child cruelty) may have been included in Count 1 (trafficking of persons for sexual servitude) and that "both counts allege what amounts to [B. E.'s] sexual servitude." We review merger issue de novo. *Womac v. State*, 302 Ga. 681, 684 (3) (808 SE2d 709) (2017).

OCGA § 16-5-46 (i) (2017) specifically states that "[e]ach violation of this Code section shall constitute a separate offense and shall not merge with any other offense." See *Byrd v. State*, 344 Ga. App. 780, 788-789 (3) (811 SE2d 85) (2018) (overruled in part on other grounds in *Thomas v. State*, 352 Ga. App. 640, 645 (1) (b) (835 SE2d 640) (2019)). Thus, the crimes did not merge.

Moreover, "[a] single act may constitute an offense which violates more than one statute, and if each statute requires proof of an additional fact which the other

does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Waits v. State*, 282 Ga. 1, 4 (2) (644 SE2d 127) (2007) (citation and punctuation omitted) (overruled in part on other grounds in *State v. Lane*, _ Ga. _, (appendix) (_SE2d_) (2020) (2020 Ga. LEXIS 98). Moore's convictions for trafficking in persons and for child cruelty fell under two distinct statutes, and each statute required proof of at least one fact which the other did not (e.g., excessive pain, coercion or deception). And the two crimes are not so closely related that multiple convictions are prohibited under other provisions of OCGA §§ 16-1-6 and 16-1-7. See *Waits*, supra. Thus, Moore has not shown her trial counsel was deficient as to the merger issue.

(d) Moore contends that trial counsel was ineffective because he failed to object when the prosecutor asked witnesses leading questions on direct examination. At the hearing on the motion for new trial, trial counsel testified that counsel for Moore's co-defendant objected extensively at trial and that Moore's counsel joined in those objections, deciding not to make separate objections in those instances. Trial counsel explained that he used objections sparingly so as not to, inter alia, draw attention to a matter unless it was "something that's really damaging" to the defense.

13

Counsel testified: "I'm always of the opinion if it ain't killing your case, I mean, you don't need to pound with objections."

> Decisions regarding when and how to raise objections are generally matters of trial strategy, and such strategic decisions do not constitute deficient performance unless they are so patently unreasonable that no competent attorney would have chosen them. Indeed, the decision not to object to leading questions is often the result of reasonable trial strategy. And given that [Moore] has not made a contrary showing in this regard, [she] has failed to demonstrate that [her] trial counsel performed deficiently.

*Lewis v. State*, 351 Ga. App. 603, 608 (3) (c) (831 SE2d 837) (2019) (citation and punctuation omitted) (defense counsel was not deficient for failing to object to the State asking leading questions of the victim, her mother, her friend and a police officer, as the failure to object resulted from reasonable trial strategy).

(e) Moore contends that trial counsel was ineffective because he failed to object to the admission of B. E.'s prior consistent statements that constituted hearsay or improper bolstering. She complains that counsel did not object when several witnesses - a sheriff's deputy , a sheriff's investigator , B. E.'s mother, and a social worker - repeated B. E.'s out-of-court statements, thus bolstering her testimony.

14

OCGA § 24-6-613 (c) pertinently provides that "[a] prior consistent statement shall be admissible to rehabilitate a witness if the prior consistent statement logically rebuts an attack made on the witness's credibility."

> [A] witness's prior consistent statement is admissible when (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination. And a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination.

*Pepe-Frazier v. State*, 331 Ga. App. 263, 265 (1) (770 SE2d 654) (2015) (citations and punctuation omitted).

B. E. was the first witness to testify at trial. Moore (and her co-defendant) asked B. E. questions on cross-examination that placed the veracity of her testimony at issue, questioning her about statements she made or failed to make sooner regarding the allegations. B. E. was challenged on cross-examination regarding her earlier testimony that she had wanted to attend school and asked if she had used heroin. Defense counsel also asked B. E. if she had engaged in "basically [the] same prostitution things" when she was on her own in the months before she started staying at Moore's home. B. E. replied that she had been doing what she had to do in order

15

to survive, including exchanging sex acts for money, but that she did not consider what she was doing before "prostitution." She added that she had not expected to have to sell her body in order to stay at Moore's house, and she thought Moore loved and cared about her. The prior consistent statements logically rebutted an attack made on B. E.'s credibility. See OCGA § 24-6-613 (c). Thus, the prior consistent statements were relevant and admissible to rehabilitate B. E. as a witness. See OCGA § 24-4-401 (defining "relevant evidence"), OCGA § 24-6-613 (c). Counsel was not ineffective for failing to make a meritless objection. See *Lupoe*, supra.

(f) Moore contends counsel was ineffective because he failed to object to testimony that she gave B. E. synthetic marijuana to coerce her to perform sex acts for money, that synthetic marijuana was found in Moore's house, and that the substance referred to as "Gucci" was synthetic marijuana. Moore argues that the State failed to lay a foundation to support the claim that "Gucci" was the equivalent of marijuana, as there was no evidence that the substance was subjected to chemical analysis. We note that neither the charged statute (OCGA § 16-5-46 (c) (2017)) nor the allegations set forth in the indictment required the State to prove that Moore gave B. E. drugs. In any event, no deficiency has been shown.

16

"[E]xpert testimony is not necessary to identify a substance, including drugs. And even if police officers are not formally tendered as expert witnesses, if an adequate foundation is laid with respect to their experience and training, their testimony regarding narcotics is properly admitted." *Atkinson v. State*, 243 Ga. App. 570, 572 (1) (531 SE2d 743) (2000) (citations omitted).

When asked at trial if Moore and Robertson ever gave her any drugs, B. E. replied that they gave her "Gucci" to smoke; B. E. testified that Gucci was "[s]ynthetic marijuana." An investigator with over five years experience with the Hall County Sheriff's Office, including experience investigating narcotics cases, testified that he participated in the search of Moore's house. He stated that synthetic marijuana and items used to make synthetic marijuana cigarettes were found in the house. He explained that synthetic marijuana is made by spraying potpourri-type leaves with a chemical compound that has a "hallucinogenic-type marijuana effect"; when asked to compare the relative street value of Gucci and "just marijuana," the investigator testified that Gucci was more expensive. He testified that people place synthetic marijuana into emptied-out tobacco cigarette wrappers and roll the leaves into cigarettes or "blunts" to smoke.

The trial court was within its discretion in permitting the investigator to give his opinion that the substance in question was synthetic marijuana. See *Atkinson*, supra. Accordingly, trial counsel was not deficient for failing to object to testimony that synthetic marijuana was found in the house. See generally *Lupoe*, supra at 246 (8) (trial counsel is not deficient for failing to make a meritless objection).

(g) Moore contends that trial counsel provided ineffective assistance by failing to object to the testimony of an agent with the Georgia Bureau of Investigation (GBI) regarding the typical profile of a trafficking victim, inasmuch as the agent had no specific testimony pertaining to the trafficking charge for which Moore was on trial.

The GBI agent, who was tendered and accepted as an expert in human trafficking investigations, testified that she had several years of training and experience in investigating crimes against children, including working in the GBI's child sex trafficking unit and teaching law enforcement officers about child sex trafficking. She testified that victims of trafficking are typically children who have run away from home or have been "push[ed] . . . out on the street" by their families and have nowhere to go, that traffickers take advantage of the children's vulnerabilities, and that the children develop a "love relationship" with their traffickers and do what they have to do to "keep the . . . trafficker[s] happy." She

18

added that children who are being trafficked do not always identify themselves as victims. The trial court was authorized to find that the evidence was relevant to explain B. E.'s behavior (e.g., why she did not report Moore's actions earlier or why she might have provided contradictory statements). See generally *Vass v. State*, 347 Ga. App. 535, 541-542 (3) (820 SE2d 181) (2018) (involving an expert in domestic violence); OCGA § 24-4-401 (relevance). The testimony was not improper. See generally *Chamberlain v. State*, 347 Ga. App. 775, 782-783 (3) (b) (819 SE2d 303) (2018) (it was not improper for an expert in the areas of child sexual abuse and the dynamics of disclosure to testify that a victim's behavior was consistent with sexual abuse, and to testify regarding recantation and reaffirmation statistics). An objection to the challenged testimony would have lacked merit, and failure to make a meritless objection cannot be evidence of ineffective assistance of counsel. See id. at 783. Accordingly, the trial court did not err in denying Moore's motion for new trial based on her claim that she received ineffective assistance of counsel.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur*.